IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CV-6-FL

| | |
|---|---|
| DENISE PENNELL, | ) |
|               Plaintiff, | ) |
| v. | )     ORDER |
| WAKE MED, | ) |
|               Defendant. | ) |

This matter is before the court upon defendant's motion for judgment on the pleadings (DE 12) and plaintiff's motion to amend complaint (DE 20). The motions have been briefed fully and the issues raised are ripe for ruling. For the following reasons, defendant's motion is granted and plaintiff's motion is denied.

**STATEMENT OF THE CASE**

Plaintiff commenced this action in Wake County Superior Court, on November 30, 2018, asserting a claim against defendant, her former employer, for discriminatory discharge in violation of Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(a). Plaintiff seeks compensatory damages, reinstatement, back pay, front pay, lost benefits, attorney's fees, costs, and interest.

Defendant removed to this court on January 8, 2019, and filed the instant motion for judgment on the pleadings on March 8, 2019. In support thereof, defendant relies upon plaintiff's charge of discrimination filed with the Equal Employment Opportunity Commission ("EEOC")

1

(hereinafter, the "EEOC charge"). Plaintiff responded in opposition to defendant's motion on March 29, 2019, and she filed the instant motion to amend complaint on April 1, 2019, relying upon a proposed amended complaint and redline showing changes proposed. Defendant filed a combined response in opposition to the motion to amend and reply in support of its motion on May 13, 2019. Plaintiff replied in support of her motion to amend on May 28, 2019.

## STATEMENT OF ALLEGED FACTS

The facts alleged in the complaint may be summarized as follows. Plaintiff began employment with defendant in 1988 as a staff nurse in defendant's operating rooms. In early 2017, plaintiff applied for a position in defendant's Patient and Family Experience ("PFE") Department. (Compl. ¶ 9). Plaintiff was hired as a "PFE Specialist," and began working in the position on April 12, 2017. (Id.).

"During the time that [p]laintiff worked in the PFE Department, she was directly supervised by Annie Brito ['Brito'], her team leader." (Id. ¶ 10). Brito was, among other things, responsible for training plaintiff and other new PFE Department employees. According to plaintiff, "Brito treated Plaintiff in a noticeably different manner than she treated other employees." (Id. ¶ 11). According to plaintiff, "Brito routinely screamed at Plaintiff but did not scream at other employees." (Id.).

"Brito did not provide Plaintiff with adequate training and seemed to resent Plaintiff." (Id. ¶ 12). "This failure to provide adequate training made it more difficult for Plaintiff to successfully perform her job duties." (Id.). According to plaintiff, in "June 2017, [Brito] and Terri Veneziale ['Veneziale'], the PFE Department Executive Director, had a discussion about Plaintiff within earshot of other PFE Department Employees," during which "Brito and []Veneziale

speculated that Plaintiff had some sort of learning disability or early onset Alzheimer's." (Id. ¶ 13).

In late July 2017, Veneziale and Susan McFarland ("McFarland"), the PFE Department Manager, allegedly told plaintiff "that they believed Plaintiff had an auditory processing disorder, dyslexia and ADHD and that Plaintiff should be tested for these conditions." (Id. ¶ 14). "Plaintiff agreed to utilize Defendant's EAP program for such testing because she wanted to keep her job as a PFE Specialist." (Id.). A licensed psychologist examined plaintiff on August 10, 2017, and a follow-up was scheduled for August 29, 2017.[1] (Id. ¶ 15).

McFarland and Brito told plaintiff on August 18, 2017, that she was going to be terminated and also advised plaintiff to resign. On August 21, 2017, plaintiff submitted a notice of resignation, and was, according to plaintiff, "effectively discharged from her PFE Specialist position." (Id. ¶ 18). Results of plaintiff's psychological testing received after discharge "showed that Plaintiff did not have ADHD or any other learning disabilities." (Id. ¶ 19).

On January 29, 2018, plaintiff filed her EEOC charge, alleging that defendant had discharged plaintiff on account of her perceived disability. (Id. ¶ 21; see EEOC charge (DE 13-1)).[2]

---

1   Although the complaint states the date as "August 29, 2018," plaintiff's EEOC charge states "end of August 2017." (DE 13-1 at 3). Based on the context and the EEOC charge, the court assumes for purposes of the instant motion that the referenced date is in 2017. This discrepancy is not material to the decision herein.

2   Because the EEOC charge "is integral to and explicitly relied on in the complaint," and its authenticity is not challenged by plaintiff, the court considers it in considering the instant motion to dismiss. Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 606 07 (4th Cir. 2015).

3

# DISCUSSION

A.  Standard of Review

A motion for judgment on the pleadings is evaluated on the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Burbach Broad. Co. of Delaware v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, the "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.  Analysis

1.  Motion to Dismiss

Defendant moves to dismiss plaintiff's claim on the basis that plaintiff fails to plead all the elements of a prima facie case of discriminatory discharge under the ADA.

"In an ADA wrongful discharge case, a plaintiff establishes a prima facie case if [s]he demonstrates that (1) [s]he is within the ADA's protected class; (2) [s]he was discharged; (3) at the time of [her] discharge, [s]he was performing the job at a level that met [her] employer's legitimate expectations; and (4) [her] discharge occurred under circumstances that raise a

reasonable inference of unlawful discrimination." Haulbrook v. Michelin N. Am., 252 F.3d 696, 702 (4th Cir. 2001). A plaintiff is within ADA's protected class if she is "a qualified individual with a disability," including "being regarded as having" a disability. 42 U.S.C. §§ 12112, 12102(2).

To meet the third element of the prima facie case, a plaintiff must allege her "job performance was satisfactory." Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994). "[A] showing of satisfactory performance does not require the plaintiff to show that [s]he was a perfect or model employee." Haynes v. Waste Connections, Inc., 922 F.3d 219, 225 (4th Cir. 2019). But, a plaintiff must show she "was qualified for the job and that [s]he was meeting [her] employer's legitimate expectations." Id.

Here, plaintiff has not alleged facts permitting a plausible inference that she was meeting her employer's legitimate expectations at the time she was discharged. Indeed, plaintiff does not allege satisfactory job performance. She suggests to the contrary by stating that a failure to provide adequate training "made it more difficult for Plaintiff to successfully perform her job duties." (Compl. ¶ 12). Furthermore, in her EEOC charge, plaintiff alleges that on July 20, 2017, she "received [her] 90-day performance review," in which she "was told that [she] was not performing [her] job in accordance with [Brito's] expectations." (DE 13-1 at 3). She alleges in her complaint and her EEOC charge that the department manager, McFarland, told plaintiff, on August 18, 2017, "if I were you, I would resign." (Id.; Compl. ¶ 16). Accordingly, plaintiff fails to allege that she was meeting defendant's legitimate expectations at the time of alleged discharge.

In opposition to dismissal, plaintiff does not contend that she performed her job satisfactorily or at a level that met defendant's legitimate expectations. Rather, she suggests that she should be excused from establishing that element of her prima facie case because defendant

5

prevented plaintiff from successfully performing all of her job duties, due to a failure to train and discriminatory belief that plaintiff had a disability. Plaintiff also advances this theory of relief in support of her motion to amend complaint, in which she proposes additional allegations regarding defendant's failure to train plaintiff and interference with her job duties. The court addresses this alternative theory of relief in the next section addressing whether plaintiff's proposed amendments are futile.

For purposes of the instant claim, plaintiff has not alleged facts sufficient to establish all the elements of the prima facie case of discriminatory discharge in violation of the ADA. Accordingly, defendant's motion to dismiss is granted and plaintiff's claim is dismissed.

2. Motion to Amend

Plaintiff moves to amend her complaint to add additional allegations regarding her job performance and training.

Leave to amend must be freely given when justice so requires, and "should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc). Amendment is futile "if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards." Katyle v. Penn Nat. Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011).

Here, amendment is futile because plaintiff's proposed amended complaint fails to state a claim for the same reasons as the operative complaint. Plaintiff has not alleged facts permitting an inference that "at the time of [her] discharge, [s]he was performing the job at a level that met [her] employer's legitimate expectations." Haulbrook, 252 F.3d at 702. The proposed amended

allegations continue to suggest to the contrary, where it is alleged that a failure to provide adequate training "concerning IT and correspondence procedures" "made it more difficult for Plaintiff to perform that part of job duties." (Prop. Am. Compl. ¶ 18). Plaintiff states that she "<u>would have been able to perform</u> all of her job duties in a more than satisfactory manner had [Brito] provided Plaintiff with adequate training and assistance." (Id. ¶ 19) (emphasis added).

Plaintiff alleges, despite these shortcomings, that she "received numerous compliments from patients and physicians regarding the manner in which Plaintiff performed her job duties as a PFE Specialist." (Id. ¶ 28). But, compliments from the public and physicians, who are not plaintiff's employer, are not probative to whether plaintiff was meeting defendant's legitimate expectations. See <u>King v. Rumsfeld</u>, 328 F.3d 145, 149 (4th Cir. 2003); <u>Hawkins v. PepsiCo, Inc.</u>, 203 F.3d 274, 280 (4th Cir.2000). Moreover, plaintiff makes clear in her EEOC charge that, on July 20, 2017, plaintiff "received [her] 90-day performance review," in which she "was told that [she] was not performing [her] job in accordance with [Brito's] expectations." (DE 13-1 at 3). Accordingly, plaintiff fails to allege that she was meeting defendant's legitimate expectations at the time of alleged discharge.

Plaintiff also alleges that she "was performing her job in a satisfactory manner <u>in light of the following</u>: [Brito's] refusal to provide Plaintiff with appropriate training and assistance; and the failure of Defendant to allow Plaintiff the necessary time that [McFarland] said it would take for Plaintiff to learn all aspects of the PFE Specialist position." (Prop. Am. Compl. ¶ 30) (emphasis added). She alleges that McFarland told her "that it would take one year for Plaintiff to learn all aspects of the PFE Specialist position." (Id. ¶ 14). Plaintiff contends that Brito's failure to train

7

plaintiff was due to discrimination based upon perceived disability, thus rendering any performance expectations illegitimate. (Id. ¶ 31).

These allegations and contentions are insufficient to salvage plaintiff's claims for several reasons. First, plaintiff's assertion that she "was performing her job in a satisfactory manner," in light of criteria she identifies, is a conclusory assertion of the element of the prima facie case and a legal argument, instead of a well-pleaded fact. See Nemet, 591 F.3d at 255. Second, plaintiff's enumerated criteria for determining performance standards are based upon her own self-assessment of her job performance criteria, which is not probative of defendant's assessment of plaintiff's performance at the time of discharge. See Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 518 (4th Cir. 2006); Hawkins, 203 F.3d at 280.

Third, plaintiff did not exhaust administrative remedies on her claim that defendant discriminated against her in failing to train adequately. "The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962–63 (4th Cir. 1996). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Id. at 963.

Plaintiff does not assert in her EEOC charge that defendant discriminated against her by failing to train her adequately. Indeed, the EEOC charge is limited to asserting discrimination taking place on the date of alleged discharge, August 21, 2017. (DE 13-1 at 2). Plaintiff asserts she "was discharged in violation of the [ADA]," that defendant "regarded [her] as having disabilities," and that this "mistaken belief led them to discharge [her] from employment." (Id.

8

at 4). Plaintiff's claim that defendant discriminated against her by failing to train her involves underlying facts distinct in time from her discharge and a type of claim that is categorically different from a discriminatory discharge claim. Thus, plaintiff's failure to train claim is not "reasonably related to the original complaint." Evans 80 F.3d at 963; see Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002) (stating that allegation that defendant "denied training" to plaintiff was a "prior discrete discriminatory act," among others, separate from discharge); see e.g., Novitsky v. Am. Consulting Engineers, L.L.C., 196 F.3d 699, 702 (7th Cir. 1999) (holding that failure to accommodate claim is not related to discharge claim made in EEOC charge).

Finally, plaintiff has not alleged facts to support a discriminatory failure to train claim. "To establish a prima facie case of discriminatory denial of training, a plaintiff must show that: (1) the plaintiff is a member of a protected class; (2) the defendant provided training to its employees; (3) the plaintiff was eligible for the training; and (4) the plaintiff was not provided training under circumstances giving rise to an inference of discrimination." Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649–50 (4th Cir. 2002). At bottom, a plaintiff must allege "that similarly situated employees were selected for" training whereas plaintiff was not, due to discrimination. Id. at 650.

Here, plaintiff alleges that defendant "did not provide Plaintiff with adequate training concerning IT and correspondence procedures." (Prop. Am. Compl. ¶ 18). Plaintiff does not allege, however, that other similarly situated employees received such training but she did not. She does not identify any other similarly situated employees, or whether they received such alleged training that was not provided to plaintiff. Plaintiff cites one example, during "staff meetings for the PFE team," where "other team members . . . were allowed to speak and ask questions" but

9

plaintiff was not.  (Id. ¶ 21).  But, there is no plausible basis to infer that this was related to "training concerning IT and correspondence procedures" that plaintiff failed to receive.  (Id. ¶ 18).  In sum, plaintiff's claim based upon discriminatory failure train is speculative and is not grounded in factual allegations giving rise to an inference of discrimination.

In sum, where the proposed amended complaint fails to state a claim upon which relief can be granted, plaintiff's motion to amend complaint must be denied.  Given that plaintiff already has had an opportunity to propose an amendment to the complaint in response to defendant's motion to dismiss, and plaintiff's proposed amended claim is not exhausted in any event, the court's dismissal of plaintiff's claim is with prejudice.

## CONCLUSION

Based on the foregoing, the court GRANTS defendant's motion to dismiss, (DE 12), and DENIES plaintiff's motion for leave to amend (DE 20). Plaintiff's complaint DISMISSED WITH PREJUDICE.   The clerk is DIRECTED to close this case.

SO ORDERED, this the 4th day of October, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge